IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

GARY LEE CHANDLER,

                Plaintiff,

v.                                            CIVIL ACTION NO. 2:11-cv-00002

CHEVRON USA, INC.,

                Defendant.

**MEMORANDUM OPINION & ORDER**

Pending before the court is the Defendant's Partial Motion to Dismiss Amended Complaint [Docket 8]. For the reasons stated below, this motion is **GRANTED**.

**I.    Background**

*a. Facts*

Prior to 1983, Texaco, Inc., corporate predecessor to defendant Chevron USA, Inc., ("Chevron"), owned and operated a gas station on the property at issue in this case. The plaintiff, Mr. Gary Lee Chandler, purchased the property from Chevron in January 1983. According to Mr. Chandler, upon purchasing the property Chevron "required" him to sign a document stating he "intended to use" underground storage tanks that were located on the property. (Am. Compl. [Docket 1-1] ¶¶ 31,74.) Despite signing this document, Mr. Chandler alleges that he only intended to operate a car wash on the property, and "Chevron was aware that a car wash would not use any underground storage tanks." (*Id.* ¶ 30.)

In 2007 Mr. Chandler sold the property at issue to Nu Rentals, LLC. During the negotiations for the sale of the property, Mr. Chandler and Nu Rentals "discovered that the soils and

groundwater on the Property had been contaminated by petroleum constituents believed to have been released from the [underground storage tanks]." (Mem. Supp. Def. Chevron USA, Inc.'s Partial Mot. Dismiss Am. Compl. [Docket 9], at 2.) Nu Rentals notified the West Virginia Department of Environmental Protection ("DEP") of the contamination, which, in turn, notified Chevron. Mr. Chandler alleges that Chevron responded to the DEP by asserting that Mr. Chandler, not Chevron, was the owner and operator of the underground storage tanks based on the "intend to use" document signed by Mr. Chandler. Chevron also informed Nu Rentals that Mr. Chandler was the owner and/or operator of the underground storage tanks. According to the Amended Complaint, Chevron knew that Mr. Chandler intended for the property to become a car wash and that such usage would not involve the underground storage tanks. Mr. Chandler alleges that as a result of Chevron's misrepresentations, the DEP "issued orders requiring Chandler to expend response costs to remediate soil and groundwater contamination." (Am. Compl. ¶ 45.) In addition, Nu Rentals "expended over $180,000 in response to cleaning up the property." (*Id.* ¶ 47.)

On September 26, 2008, Nu Rentals sued Mr. Chandler in this court asserting, among other things, that Mr. Chandler was the owner or operator of the underground storage tanks. Mr. Chandler denied that he was the owner and operator and moved for summary judgment on November 5, 2009. On December 18, 2009, I granted partial summary judgement to Mr. Chandler, finding that he was not the owner and operator of the storage tanks. *See Nu Rentals, LLC v. Chandler*, No. 2:08-cv-01128, 2009 WL 5170181 (S.D. W. Va. Dec. 18, 2009). In pertinent part, I concluded that, since Nu Rentals "d[id] not allege that Mr. Chandler owned the storage tanks while they were still in use, as required by the [West Virginia Underground Storage Tank Act,] . . . Mr. Chandler is not and never was the owner or operator of any tanks located or previously located on the property." *Id.* Thereafter,

Mr. Chandler and Nu Rentals settled their dispute, based in part on an arrangement whereby "in exchange for appropriate consideration, Chandler acquired all Nu Rental's rights to pursue compensation and damages from Chevron (or any other party) arising from or related to Chevron's ownership and operation of the underground storage tanks, in addition to the rights Chandler already possesses to pursue such compensation/damages." (Am. Compl. ¶ 10.)

    *b. The Instant Lawsuit*

On December 22, 2010, Mr. Chandler served Chevron with an Amended Complaint in the instant lawsuit. On January 3, 2011, Chevron timely removed the action to this court on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a). Count I of the Amended Complaint, entitled "Statutory and Regulatory Liability," asserts that Chevron, pursuant to federal and state statutes and regulations, is the owner or operator of the underground storage tanks. (Am. Compl. ¶ 19.) Count II, "Intentional/Fraudulent Misrepresentation and/or Negligent Misrepresentation," asserts that Chevron, "acted in bad faith, with gross fraud, malice and oppression by misrepresenting to [the DEP and to Nu Rentals] that Chandler was the owner/operator of the underground storage tanks with the 'intend to use' document." (*Id.* ¶¶ 35, 41.) Mr. Chandler alleges that Chevron knowingly made false statements to the DEP and Nu Rentals and "failed to inform Chandler" of these misrepresentations, which were the direct and proximate cause of Mr. Chandler's damages. (*Id.* ¶¶ 42-45.) Count III seeks a declaratory judgement that Chevron is the legal owner of one storage tank that remains on the property. Count IV and Count V[1] request punitive damages and attorneys' fees, respectively.

---

[1] Plaintiff's Amended Complaint includes two Count IVs. The court will refer to the claim for attorneys' fees as Count V.

Chevron filed its Partial Motion to Dismiss Amended Complaint on February 7, 2011, seeking to dismiss counts II, IV and V. Chevron argues that: 1) it made no false statement that could support a fraud claim; 2) Mr. Chandler and Nu Rentals did not rely on Chevron's alleged misrepresentations and, even if they did, such reliance was not justified; 3) fraud claims arising from the 1983 sale of the property to Mr. Chandler are barred by the statute of limitations, and 4) Mr. Chandler cannot recover punitive damages or attorneys' fees.

## II.     Standard of Review

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8 requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. As the Supreme Court reiterated in *Ashcroft v. Iqbal*, that standard "does not require 'detailed factual allegations' but 'it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) for the proposition that "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'"). A court cannot accept as true legal conclusions in a complaint that merely recite the elements of a cause of action supported by conclusory statements. *Iqbal*, 129 S. Ct. at 1949-50. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 570).

To achieve facial plausibility, the plaintiff must plead facts that allow the court to draw the reasonable inference that the defendant is liable, and those facts must be more than merely consistent with the defendant's liability to raise the claim from merely possible to probable. *Id.*

In determining whether a plausible claim exists, the court must undertake a context-specific inquiry, "[b]ut where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). A complaint must contain enough facts to "nudge[] [a] claim cross the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

The *Iqbal* court suggested a two-pronged inquiry to determine if the complaint survives a motion to dismiss as set forth by *Iqbal*, which I will follow here. First, I will identify any pleadings that are not entitled to the assumption of truth because they are conclusory and unsupported by factual allegations. *See Iqbal*, 129 S. Ct. at 1949-50. Where there are well-pleaded factual allegations, I will assume the veracity of those facts and then will determine, based on judicial experience and common sense, whether they plausibly give rise to a valid claim for relief. *See id.*

### III. Discussion

*a. Intentional/Fraudulent Misrepresentation and/or Negligent Misrepresentation*

Mr. Chandler alleges that Chevron fraudulently attributed ownership of the underground storage tanks and, by implication, responsibility for the severe soil contamination on the property, to Mr. Chandler. The elements of fraud in West Virginia are: (1) that the defendant committed an act; (2) that the act "was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it;" and (3) that the plaintiff was damaged due to his reliance. *Lengyel*

*v. Lint*, 280 S.E.2d 66, 69 (W. Va. 1981).[2] The defendant need not know that the act he committed was false; an action for fraud may lie where the defendant is aware of the falsity of his act, or acts without knowledge as to its truth or falsity, or acts "under circumstances such that he should have known of its falsity." *Id.*

Following the *Iqbal* two-pronged analysis, I turn to the pleadings at issue in this fraud case. Mr. Chandler alleges that when the DEP contacted Chevron, Chevron "assert[ed] that Chandler was the owner and/or operator of the underground storage tanks based on the 'intend to use' document." (Am. Compl. ¶ 34.) As a result of Chevron's assertion, the DEP "issued orders requiring Chandler to expend response costs to remediate soil and groundwater contamination arising from or related to Chevron's underground storage tanks[,]" and "[o]n behalf of Chandler and in order to comply with the WVDEP order, Nu Rentals expended over $180,000 in response costs." (*Id.* ¶¶ 45, 47.) The pleadings allege Chevron "intentionally, willfully, wantonly, recklessley, carelessly and negligently made material misrepresentations [to the DEP and Nu Rentals.]" (*Id.* ¶¶ 42-44.) I will assume, for purposes of this motion to dismiss, that all the pleadings are factual and are entitled to a presumption of truth.

Based on my judicial experience and common sense, however, I do not find that these allegations plausibly give rise to a valid claim for relief. In order for Mr. Chandler to hold Chevron liable, Mr. Chandler must allege facts sufficient to form a plausible claim on its face. In a claim for

---

[2] A federal court sitting in diversity must "interpret and apply the substantive law of the state in which the action arose." *Castillo v. Emergency Med. Assocs., P.A.*, 372 F.3d 643, 646 (4th Cir. 2004) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 66 (1938) (parallel citations omitted)). Because this action arose in West Virginia, the court must interpret and apply West Virginia law to the claims alleged in the suit.

fraud, there must be some factual basis for the court to infer that "the representations contributed to the formation of the conclusion in the plaintiff's mind[.]" Syl. pt. 3, in part, *Horton v. Tyree*, 139 S.E. 737 (W. Va. 1927). There are no such allegations in the Amended Complaint. According to Mr. Chandler, he signed the "intend to use" document "[a]s a requirement for the purchase of the property" even though he intended to use the property as a car wash and "Chevron was aware that a car wash would not use any underground storage tanks." (Am. Compl. ¶¶ 30, 32.) The document, according to Mr. Chandler, "was a purposeful effort to create misleading documentation regarding Chevron's status as the legal owner and operator of the underground storage tanks." (*Id.* ¶ 33.) This may be true. As alleged, however, Mr. Chandler knew at the time he signed the "intend to use" document that it was false. Yet, for whatever reason, Mr. Chandler signed the document and completed the sale. Mr. Chandler now alleges that Chevron committed fraud in 2008 by providing this document, which Chevron also knew was false, to the DEP. In essence, Mr. Chandler wants this court to believe he was misled and defrauded by his own signed statement. I find these facts do not give rise to a plausible claim for relief.

Mr. Chandler, however, is also "suing to press Nu Rentals' rights as against Chevron." [Pl.'s Resp. Opp'n Def.'s Mot. Dismiss [Docket 11], at 6-7.) The allegations in the Amended Complaint as to fraud against Nu Rentals, even if true, still do not give rise to a valid claim. Nu Rentals asserts that it expended significant response costs "[o]n behalf of Chandler and in order to comply with the WVDEP order." (Am. Compl. ¶ 47.) This allegation is inexplicable, however, as the DEP's order was directed at Mr. Chandler. In failing to allege any plausible connection between Chevron's misrepresentations and the actions taken by Nu Rentals, the plaintiff has failed to properly state a claim for fraud. Put simply, to recover for fraud, as with any tort, the plaintiff must plead conduct

causing harm. Moreover, I am especially mindful of the Supreme Court's recent focus on whether a plausible claim for relief is apparent from the face of the complaint. Because the Amended Complaint offers no plausible link between Chevron's statements and any harm that befell Nu Rentals, Chevron's Motion to Dismiss is **GRANTED**.

I **FIND** that Mr. Chandler has failed to allege facts that would plausibly give rise to a valid claim for relief for Count II of the Amended Complaint. Therefore, Chevron's motion to dismiss is **GRANTED** as to Count II.

    *b. Punitive Damages and Attorney's Fees*

Because the plaintiff has failed to sufficiently plead fraud, I **FIND** that he cannot recover punitive damages and attorney's fees. Accordingly, I **GRANT** the motion to dismiss Counts IV and V of Mr. Chandler's Amended Complaint.

**IV.   Conclusion**

For the reasons stated above, the court **GRANTS** Chevron's Partial Motion to Dismiss Amended Complaint [Docket 8]. The court **DISMISSES** Counts II, IV and V without prejudice. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

                                        ENTER:     April 13, 2011

                                        Joseph R. Goodwin, Chief Judge